IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN THE MATTER OF<br>THE SEARCH OF UDF<br>301 MUNICIPAL WAY<br>GRAPEVINE, TEXAS 76051 | No. 3:21-cv-1973-B<br><br>**FILED UNDER SEAL** |

## GOVERNMENT'S RESPONSE TO
## MOVANT'S MOTION FOR RETURN OF PROPERTY

The government wants to return any privileged material belonging to UDF, but there is one major problem: UDF refuses to assert privilege over specific documents, despite having originals or copies of all of those documents for years. Accordingly, the Court should deny UDF's motion for relief on the basis that UDF has waived any privilege.

## BACKGROUND

### A. Execution of the Search Warrant

Federal law enforcement executed a search warrant at UDF's office on February 18, 2016. Although UDF complains *ad nauseum* that this search was "illegal" and "unconstitutional," the fact remains that the warrant was issued by a United States magistrate judge upon a finding of probable cause, and no court has found any defect in the warrant or warrant application.

During the search, agents collected two broad categories of evidence: electronic evidence (servers, computers, laptops, cellphones, etc.), and physical evidence (papers, binders, notebooks, etc.). As set forth below, all of the original electronic evidence was

returned to UDF days after the search, and electronic copies of all of the physical evidence was returned to UDF in Spring 2019.

The government knew that UDF's Chief Operating Officer Melissa Youngblood was an attorney, and in anticipation of searching her office, employed a team of filter agents to search her office and the surrounding area. The documents seized from those locations were segregated from the rest of the evidence collected.

### B. UDF's Counsel Provided a List of Search Terms to Identify Potentially Privileged Documents

On February 25, 2016, UDF's attorney, Barrett Howell, emailed the government a list of search terms to identify potentially privileged materials. (Exhibit 1.) The government used these terms to filter the electronic evidence and the physical evidence once it had been scanned and OCR'ed.

### C. The Government Returned UDF's Electronic Devices Less Than Two Weeks After the Search

Eight days after the search, the government, having made its own copies, returned servers, computers, laptops, and UDF-issued cellphones to Mr. Howell. (Exhibit 2.) Four days later, the government retuned the remaining electronic devices to an associate attorney working with Mr. Howell. (Exhibit 3.) Thus, in less than two weeks after the execution of the search warrant, the government had returned all of the seized electronic devices to UDF, which provided UDF with a complete (original) set of electronic documents seized by the government.

### D. The Government Made the Physical Evidence Available for Inspection and Copying

Although it was under no legal obligation to do so, the government voluntarily made certain physical records available to UDF for inspection and copying. In the weeks and months following the execution of the warrant, counsel for the government worked with UDF's counsel and counsel for some of UDF's executives to provide access to specific, requested physical documents. For example:

- On June 23, 2016, two UDF employees and counsel for UDF's CEO made photocopies of seized documents at the FBI.

- On July 7, 2016, two UDF representatives and counsel for UDF's CEO made photocopies of seized documents at the FBI.

- On November 5, 2018, four attorneys representing Ms. Youngblood made photocopies of seized documents at the FBI.

### E. UDF's Counsel Cleared Documents to be Released to the Prosecution Team

On May 15, 2018, more than two years after the search, UDF's counsel contacted the government seeking permission to review the evidenced seized from Ms. Youngblood's office so that UDF could identify specific items to which UDF was *not* asserting privilege. In the months that followed, on at least five separate occasions, (May 31, June 12, June 21, July 12, and July 18, 2018), Mr.boxes of documents at the FBI that had been seized in or around Ms. Youngblood's office. During his review, Mr. Howell identified documents that could be released to the prosecution team. The documents that Mr. Howell did not clear for release continued to be segregated from the prosecution team.

F.   **UDF's First Rule 41(g) Motion** ██████████

Curiously absent from UDF's recitation of the facts is any discussion of its previous Rule 41(g) motion, ██████████████████████ Upon a cursory review, however, it becomes abundantly clear why UDF omitted this event when petitioning the Court for the relief it now seeks.



---

[1] UDF was represented on the motion by Mr. Howell as well as the Honorable Jorge A. Solis, former Chief Judge of the Northern District of Texas.

**Government's Response to**
**Movant's Motion for Return of Property—Page 4**



The motion was ultimately resolved ▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬

Critically, however, at no point did UDF demand the return (or destruction) of any specific documents on the basis that they were protected by the attorney-client privilege.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬

### G. The Government Produced an Electronic Copy of All of the Physical Evidence to UDF

Consistent with its agreement with UDF's counsel, ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ the government produced an electronic copy of all of the physical evidence to Mr. Howell in two batches: the first on February 15, 2019, and the second, on March 1, 2019, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬

Thus, on March 1, 2019, UDF had in its possession a complete set of every document seized by the government in the search, with the original electronic devices having been returned in 2016 and copies of the physical documents returned in Spring 2019. At that point, UDF had everything it needed to prepare a privilege log and to assert a claim of privilege over specific documents. However, with two exceptions noted

below, in the ensuing two and half years, UDF has failed to assert anything other than a broad, unspecified claim of privilege.

### H. UDF's Counsel Asserts Privilege Over Specific Documents

On February 19, 2019, UDF's counsel Barrett Howell asserted privilege over three items of physical evidence: 1B37, 1B198, and 1B125. However, Mr. Howell had previously cleared item 1B37 to be released to the prosecution team. Mr. Howell further stated that items 1B198 and 1B125 would have been caught by the agreed-upon search terms.

Despite having an electronic copy of all of the physical documents, Mr. Howell returned to the FBI on March 14, 2019, to review several boxes of documents. During his review, Mr. Howell flagged several documents as potentially privileged, and those items were segregated from the prosecution team by one of the filter agents.

### I. UDF's Counsel Initially Agreed, but the Refused to Assert Privilege Over Specific Documents

On May 12, 2021, the government's filter team asked Mr. Pelletier, UDF's new and current counsel,[2] to review a set of materials received from UDF's outside accounting firm to determine whether any of them were protected by a privilege. Although UDF did not need an invitation from the government to protect its privilege, the government's filter team nevertheless asked Mr. Pelletier to provide a privilege log if

---

[2] Mr. Howell represented UDF until approximately April 2021. On April 26, 2021, Mr. Pelletier informed the government that he now represented UDF, and on April 30, 2021, Mr. Howell's co-counsel informed the government that Mr. Pelletier was sole counsel for UDF.

UDF asserted a privilege and proposed a procedure regarding the destruction or return of agreed-upon privileged documents with a meet-and-confer procedure prior to seeking judicial review of any disputed designations:

> We have received materials from the EisnerAmper accounting firm. EisnerAmper's counsel indicated to us that they removed all potentially privileged material before producing the documents to us. Out of an abundance of caution, however, I am providing these materials to you via USAfx so that you can review them for privilege prior to me providing them to the prosecution team. Accordingly, please provide me with a privilege log identifying any documents that you deem to be privileged containing a brief explanation as to the nature and a basis of the privilege, on or before May 31, 2021.
>
> After I receive your privilege log, I will provide the uncontested non-privileged documents to the prosecution team.
>
> In the event that I agree with your privilege designations as to specific documents, I will not provide those documents to the prosecution team and will destroy and/or return them to EisnerAmper's counsel.
>
> In the event that I disagree with your privilege designations as to specific documents, I will contact you to discuss them. If we cannot reach an agreement, I will seek a judicial determination.

(Exhibit 4.)

UDF's counsel responded reasonably, "Got it. Will do." *Id.* Following his review, UDF's counsel informed the government on June 15, 2021, that he found no privileged documents in the EisnerAmper materials. Accordingly, the documents were provided to the prosecution team.

On June 23, 2021, more than five years after the government returned UDF's electronic devices, and despite UDF having utterly failed to assert a specific claim of privilege over any of Ms. Youngblood's emails, the government nevertheless asked UDF's counsel to provide a privilege log for the subset of Ms. Youngblood's emails that hit upon the agreed-upon search terms. UDF's counsel refused, calling the proposal "unworkable and unacceptable." (Pelletier Aff. Ex. 20.)

This motion followed.

## ARGUMENT

The Court should deny UDF's motion—which rests entirely on perceived complaints about the government's filter process—because UDF has waived any privilege by failing to assert it on a document-by-document basis despite having ample opportunity to do, and despite a specific (though unnecessary) invitation by the government to do so. Even if the Court were to reach the merits of UDF's motion, it should deny it because the *Richey* factors weigh in favor of the government. And lastly, the Court should deny UDF's motion to the extent it seeks to compel the government to respond to interrogatory-type questions as Rule 41(g) does not authorize such relief.

### I.     UDF Waived its Privilege by Inaction and Delay

"As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Failure to take reasonable steps to protect a privilege results in its waiver. *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) ("When the party

seeking protection fails to specifically identify the materials protected, courts have uniformly found a waiver.").

Contrary to UDF's assertion, this principle applies regardless of whether the documents are obtained voluntarily (by subpoena) or involuntarily (by search warrant). *Id.* ("We see no distinction between the attorney-client privilege and work-product doctrine that would result in different standards of waiver for involuntary disclosure."); *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992) ("When the disclosure is involuntary, we will find the privilege preserved if the privilege holder has made efforts 'reasonably designed' to protect and preserve the privilege. Conversely, we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.") (internal citation omitted).

In determining whether a party has waived privilege through involuntary disclosure, courts generally consider three factors: (1) the specificity with which the privilege holder identifies the material, (2) the expediency by which the privilege holder informs the government that privilege material has been seized, and (3) the expediency by which the privilege holder seeks judicial action to enforce the protection. *Ary*, 518 F.3d 783; *see also, In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) ("In determining whether a party has waived the privilege through inadvertent or involuntary disclosure, courts consider, among other facts, the steps taken by a party to remedy the disclosure and any delay in doing so.").

### A. UDF Failed and Refuses to Assert Privilege on a Document-by-Document Basis

The party asserting a privilege must do so on a document-by-document or communication-by-communication basis. *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[W]e have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents.") (internal citations omitted); *United States v. Neill*, 952 F. Supp. 834, 842 (D.D.C. 1997) ("The proponent of the privilege bears the burden to establish its existence, and absent the timely assertion of attorney-client privilege for each specific communication or document, no privilege will be recognized.") (internal citations omitted); *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) ("[T]he privilege must be made and sustained on a document-by-document basis. A blanket claim of privilege that does not specify what information is protected will not suffice.").

Here, UDF has made virtually no effort to identify its claim of privilege with any specificity. Indeed, not only has UDF failed to assert privilege on a document-by-document basis, it actively refuses to do so despite a request from the government's filter team. (Pelletier Aff. Ex. 20.)

### B. UDF has Shown No Expediency in Informing the Government that it Possesses Privileged Documents

Excessive delay in asserting a privilege may lead to waiver. *See, e.g.*, *Ary*, 518 F.3d at 783 (privilege waived where defendant waited six weeks after discovering government's possession of privilege documents to assert privilege); *de la Jara*, 973 F.2d

at 750 (finding waiver of privilege where proponent of privilege "did nothing to recover the [material] or protect its confidentiality during the six month interlude between its seizure and introduction into evidence."); *United States v. Hansen*, No. 4:18-CR-00346-DCN, 2019 WL 2401107, at *4 (D. Idaho June 6, 2019) (noting proponent of privilege "might have even waived his privilege due to inaction" where filter team "did not produce the results of its privilege review until December 20, 2018" because proponent of privilege "was aware of the seizure and was not deprived of the items searched [and] could have identified privilege at any time after the November 9, 2016 search"); *U.S. v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1046 (D. Nev. 2006) (privilege waived because defendant did not "take steps to identify and assert its privilege ... within a reasonable time after it was granted access to the seized records").

Here, UDF has shown no expediency in informing the government about the nature and scope of its privilege. There is no dispute that UDF has been aware of the government's seizure since February 18, 2016. Nor is there any dispute that UDF has had all of the original electronic evidence in its possession since March 1, 2016. And ███████████████████████████ UDF has had a complete electronic copy of the seized physical documents since March 1, 2019. Years later, other than the specific items flagged as privileged by Mr. Howell and the provision of a list of search terms, UDF has not identified any other documents—electronic or physical—as being protected by a privilege.

**Government's Response to**
**Movant's Motion for Return of Property—Page 12**

### C. UDF has Shown No Expediency in Seeking Judicial Protection of Its Purported Privilege

In addition to informing the government regarding claims of privilege, a privilege holder should seek prompt judicial intervention to protect its privilege. *In re Grand Jury (Impounded)*, 138 F.3d at 982 ("Merely asserting the privilege to an adversary is not sufficient to protect the privilege in these circumstances inasmuch as the adversary has possession of the materials claimed to be privileged and thus can make use of them."). Failure to do so can result in a finding of waiver. *Id.* at 981-82 (privilege waived where defendant waited four months to seek judicial intervention after government disagreed with privilege claim).

Here, UDF's has shown no expediency in seeking judicial relief. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ UDF's lack of expediency is further highlighted by the fact that it waited over a year to file the instant (albeit deficient) motion seeking judicial relief despite being unsatisfied by the government's response to inquiries made by an attorney for one of the individual targets (not UDF). (*See* Stephens Aff. Ex. A).

### D. Alternatively, the Government Will Return or Destroy Privileged Documents in its Possession Once UDF Asserts Specific Claims

If the Court does not find a complete waiver, it should order UDF to produce a privilege log to the government no later than October 15, 2021.[3]

If the government's filter team agrees with the designations, the documents will not be provided to the prosecution team and will be destroyed or returned to UDF. If the government's filter team disagrees with any of UDF's designations, it will meet-and-confer with UDF's counsel and seek a judicial determination regarding specific documents if an agreement cannot be reached.

### II.  UDF's Rule 41(g) Motion Should be Denied on the Merits.

Even if UDF has not waived its privilege with regard to the seized documents, its Rule 41(g) motion for return of property should be rejected on the merits.

The Fifth Circuit has held that a district court must evaluate four factors when deciding whether to grant a pre-indictment motion for return of property: (1) whether the motion for return of property accurately alleges that the government agents displayed a "callous disregard" for the rights of the plaintiff; (2) whether the plaintiff has an individual interest in and need for the material whose return he seeks; (3) whether the plaintiff would suffer irreparable injury from denial of the return of the property; and

---

[3] [redacted]

Government's Response to
Movant's Motion for Return of Property—Page 14

(4) whether the plaintiff has an adequate remedy at law for the redress of his grievance. *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975). UDF cannot satisfy its burden under three of these four factors.[4]

### A.   Callous disregard

UDF contends that the government showed callous disregard for UDF's rights because this case has the "same facts" as the Fifth Circuit's recent decision in *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593 (2021). But in *Harbor*—unlike here—the parties stipulated or the government conceded that: (a) the government did not seek express prior authorization from the issuing magistrate judge for the seizure of attorney-client privileged materials; (b) the government knew that there were privileged documents in the office of Harbor's compliance director; and (c) the government refused to return materials it agreed were privileged after the search. *Harbor*, 5 F.4th at 599. Based on these stipulated/conceded facts, the Fifth Circuit determined that the district court had erred in concluding that the government had not shown a "callous disregard" for Harbor's rights. *Id*.

The situation in this matter is distinguishable from *Harbor* on the "callous disregard" factor. First, unlike *Harbor*, where the government stipulated that it knew there were privileged materials located in the compliance director's office because

---

[4] For purposes of this response, the government concedes that under the Fifth Circuit's decision in *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593 (2021), UDF can satisfy the fourth *Richey* factor—no adequate remedy at law—since the *Harbor* court emphasized that Rule 41(g) motions vindicate a different interest than a suppression motion filed in a criminal case and a company may not ultimately face criminal charges and be able to file a motion to suppress. *Id*. at 600.

**Government's Response to**
**Movant's Motion for Return of Property—Page 15**

government attorneys had conducted legal discussions with the compliance director and Harbor's outside counsel before the search, here the government did not know with certainty that UDF's offices contained privileged materials. However, to respect UDF's right to attorney-client privilege in the search, the government took two specific protective measures to segregate potentially privileged materials for further filter team review. First, a team of filter agents collected and segregated evidence from the office of UDF Chief Operations Officer Melissa Youngblood, an attorney. Second, after the search, UDF counsel provided the government with a list of search terms to run against the electronic evidence in the government's possession to identify potentially privileged documents for further filter team review. These measures, coupled with UDF's multiyear failure to identify specific seized documents it believes are privileged, demonstrate that the government has not displayed a "callous disregard" for UDF's rights.

### B. Need for the seized material

UDF again cites *Harbor* when asserting that it has satisfied the second factor of showing a need for the seized material. (UDF Mot. at 21.) But in *Harbor*, the plaintiff company specifically identified thousands of seized privileged documents and the government deliberately continued to hold this material for over four years, despite agreeing that many of these materials were privileged. *Id.* at 600. Here, in contrast, UDF has not specifically identified privileged documents despite having the original seized electronic evidence returned in 2016 and getting an electronic version of the physical search-warrant evidence by March 2019. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

Having failed to demonstrate that the government is deliberately holding its privileged documents—much less the "thousands" of privileged documents at issue in *Harbor*—UDF cannot show that it has a need for the seized material.

C.   **Irreparable injury**

On this factor, UDF contends that, like in *Harbor*, it has demonstrated irreparable injury because the government supposedly continues to retain UDF's privileged documents and refuses to return them.  (UDF Mot. at 21.)  Indeed, the Fifth Circuit based its determination of irreparable injury in *Harbor* on the fact that the company had "identified thousands of privileged documents, and the government ha[d] conceded the basis for the privilege for many of those," yet the government continued to retain these privileged materials in violation of Harbor's privacy interests.  *Id*. at 600.  Here, in contrast to the factual situation in *Harbor*, UDF has not asserted privilege over specific documents in the hands of the government, despite having access to the seized electronic documents for more than five years and copies of the physical materials for more than two years.  UDF cannot show that it would be irreparably injured by the denial of this Rule 41(g) motion because it has not demonstrated that the government retains specific privileged materials, or that the government has refused to return privileged documents in its possession.  UDF's vague assertions that the government retains its privileged

documents and refuses to return these materials is insufficient to demonstrate irreparable injury under Fifth Circuit precedent. *See id.*; *United States v. Search of Law Office, Residence, and Storage Unit Alan Brown*, 341 F.3d 404, 414 (5th Cir. 2003).

Despite UDF's repeated invocations of *Harbor* in its motion, the Fifth Circuit's *Alan Brown* decision actually is more factually similar to the instant matter, and thus more instructive on the irreparable injury factor. In both *Alan Brown* and this matter, the government provided the companies with access to their seized records, and did not cause irreparable injury to the operation of either business by cutting off needed documents. *Alan Brown*, 341 F.3d at 414. And importantly, as with UDF here, in *Alan Brown* the plaintiff did not make "any effort to identify specific privileged documents in the hands of the government or provide a legal basis for asserting a particular privilege." *Id*. Instead, again like UDF, the plaintiff in *Alan Brown* only made "vague allegations that the government viewed extensive amounts of privileged information during the search . . . and after the documents' seizure." *Id*. Without specific proof substantiating these assertions, the Fifth Circuit determined that the plaintiff could not demonstrate irreparable injury. *Id*. Similarly, UDF cannot carry its burden on the irreparable injury factor, as it offers only insufficient "vague allegations" of privilege violations, and has not bothered to make any effort to identify specific privileged documents in the government's possession.

In sum, given that it cannot carry its burden on three of the four *Richey* factors, UDF's Rule 41(g) motion should be denied on the merits.

### III. Rule 41(g) Does Not Contemplate Requiring the Government to Respond to Interrogatory-Type Questions

Rule 41(g) provides a method for a party to seek return of seized materials. It does not provide any authority to require a party to propound interrogatory-style questions to the government regarding its filter process or requiring it to identify specific documents that have been passed by the filter team to the prosecution team. *United States v. Sledziejowski*, No. 3:16-CR-101-B, 2018 WL 2288962, at *4 (N.D. Tex. May 18, 2018) (finding no legal basis to compel the government to "describe its taint process fully and provide the defense with the supposed clean and privileged cuts that were allegedly made by the filter team").

Thus, to the extent UDF's motion seek answers to questions and not the return of documents, its motion should be denied.

### CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny UDF's motion.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

/s/ *Stephen P. Fahey*
STEPHEN P. FAHEY
Assistant United States Attorney
Texas State Bar No. 24101249
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8718
Facsimile: 214-659-8807
Email: Steve.P.Fahey@usdoj.gov

/s/ *Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8604
Facsimile: 214-659-8802
Email: douglas.brasher@usdoj.gov
